DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Consuaelo Clements, appeals from the judgment of the Lorain County Court of Common Pleas, Juvenile Division, terminating her parental rights to her minor child, S.C., and placing the child in the permanent custody of Lorain County Children Services ("LCCS"). We affirm.
 I. {¶ 2} S.C., born September 19, 2002, is the biological child of Appellant and Dwayne Howard. Appellant has four other children who are in the legal custody of the maternal great-grandmother. The custody of those children is not at issue in this case. Howard's parental rights were also terminated in the proceeding below, but he is not a party to this appeal.[1]
 {¶ 3} LCCS became involved with S.C. following referrals regarding Appellant. There was concern that the child was not receiving medical attention or proper care in her home. Eventually, S.C. was taken into LCCS custody on December 20, 2003, following a report that Appellant was knocking on neighbors' doors and threatening to hurt herself and her child. The police transported Appellant to Elyria Memorial Hospital, where she was admitted to the Behavioral Health Unit. Four days later, she was discharged and referred to the Nord Center.
 {¶ 4} S.C. was adjudicated dependent and placed in the temporary custody of LCCS on February 14, 2003. On November 17, 2003, LCCS moved for permanent custody. Following a hearing, the trial court granted LCCS's motion. Appellant has timely appealed and asserts a single assignment of error for review.
 II. ASSIGNMENT OF ERROR
"The trial court erred to the prejudice of appellant and in violation of O.R.C. 2151.414, the fourteenth and ninth amendments to the United States Constitution, and Article I, section 1 of the Ohio Constitution, when it terminated appellant's parental rights and granted permanent custody of the minor child to lorain county children services, where the evidence failed to satisfy the requisite standard of proof."
 {¶ 5} Appellant asserts that the evidence fails to support the judgment of the juvenile court, terminating Appellant's parental rights and placing S.C. in the permanent custody of LCCS.
 {¶ 6} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In reOzmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 7} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id.
 {¶ 8} The termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624, citing Inre Cunningham (1979), 59 Ohio St.2d 100, 105. Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 of the prior 22 months, or cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2)that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1) and 2151.414(B)(2). See, also, In re William S.
(1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} In the present case, case planning established several areas of concern: (1) the stability and safety of the child; (2) mental health; (3) a history of assaultive behavior; (4) a history of drug and alcohol abuse; and (5) the ability to meet the child's basic needs.
 {¶ 10} Concern for the stability and safety of S.C., as well as concern directed to a history of assaultive behavior of Appellant was based on numerous police reports at the time of LCCS's initial involvement. Some complaints involved the loud playing of music, others involved drug activity, and still others involved Appellant fighting with neighbors and leaving S.C. alone in the apartment. On another occasion, Appellant reported that an intruder was seeking to enter her apartment. Appellant was found holding an aerosol can over an open flame to ward off the intruder while S.C. was in the home. LCCS made a recommendation for anger management services, but Appellant failed to complete such a program.[2]
 {¶ 11} In regard to mental health issues, Kendall Smith, the LCCS caseworker, testified that Appellant self-reported a diagnosis of schizophrenia, that she heard voices over the years, that she has been on numerous medications, and that she was hospitalized for depression and suicidal ideas. She was referred to the Nord Center, but it was disputed as to whether she timely complied with a case plan request for a psychological evaluation. Caseworker Smith did not believe Appellant adequately followed through with mental health treatment, but did agree that Appellant completed a mental health crisis course.
 {¶ 12} Substance abuse was a major concern in this case. Appellant had been dependent on drugs and alcohol since 1992. As a part of these proceedings, Appellant was assessed for substance abuse in January 2003 by Dicie Grella, an addiction service counselor at the Nord Center. She was diagnosed as cocaine dependent, in remission, and alcohol dependent, with adjustment diagnosis and depressed mood. Because of reported relapses amidst continued requests for help, Appellant was referred to an intensive outpatient program. Shortly thereafter, her supervising team recommended that she participate in an inpatient program and drug court services. She began those programs in February 2003, but was discharged the next month because of a hostile attitude, poor attendance, and a failure to comply with the treatment program. By the end of March 2003, Appellant was referred to a dual diagnosis program, the Rural Women's Recovery Program in Athens, Ohio, which addressed both mental health and substance abuse issues.
 {¶ 13} In January 2003, Appellant contacted the Rural Women's Recovery Program and entered the program. Weekly progress reports were sent to LCCS. Initial reports indicated that Appellant was having conflicts with other residents and behavioral issues with the staff, the same problems she exhibited in previously unsuccessful treatment programs.
 {¶ 14} Appellant's ability to meet S.C.'s basic needs was also a concern. Appellant was evicted from South Park Apartments in April 2003. Thereafter, she stayed in homeless shelters or with friends and family. In October 2003, she obtained a one-bedroom apartment in Cleveland It was furnished with the help of donations from her church. Appellant does not own an automobile, but uses public transportation.
 {¶ 15} At the time these proceedings began, Appellant was employed at a packaging company in Elyria. That job lasted until May or June of 2003. Appellant then worked at a temporary employment company for one or two months. In August 2003, she began working at Wendy's. Edwin Cowgar, the general manager at Wendy's, testified that Appellant is a very good employee, has above-average attendance, and does her job without problems. He stated that he is anxious to have her return to work when she completes her program.
 {¶ 16} Visitation was initially scheduled for weekly two-hour visits. By May 2003, Appellant had missed several visits without providing notice, and she was requested to verify visits by an advance telephone call. In total, Appellant attended only 19 out of 41 scheduled visits, including an eight-week gap over the summer. Fall visits often took place at Wendy's, with the case aide transporting the child to the visit.
 {¶ 17} Caseworker Smith observed portions of three or four visitations. She testified that during her observations, Appellant and S.C. did not hug each other, and that Appellant interacted with other individuals present instead of her child. The caseworker suggested that Appellant should come to future visitations alone. She acknowledged a picture, offered by Appellant, which showed the Appellant and S.C. cuddling. Witness Cowgar also observed some of the visitations at Wendy's, and stated that Appellant and S.C. seemed to be getting along well and having a good time. He stated that Appellant took many pictures of the child, focused on the child, and interacted with her.
 {¶ 18} Appellant was transported by a friend, Keith Edwards, to some visitations, and Edwards testified that Appellant and S.C. got along well. He said the child recognizes Appellant, the two laugh together, and the child gets upset when it is time to leave. Edwards stated Appellant has been sober since November 2002, and she has been more focused and financially responsible. Edwards admitted he had a criminal record. He had been convicted of rape, kidnapping, and felonious assault.
 {¶ 19} When S.C. first came into care, she had a chronic cough and runny nose, which, according to the caseworker, were indicative of prenatal drug and alcohol abuse. S.C. did not like to be held, would clinch her fists and become stiff. Her fine and gross motor skills were delayed. Services through the Help Me Grow Program were offered, and the child has been receiving physical and speech therapy. She is now 17 months old and has made great progress, but is still developmentally delayed. S.C. is in a single-parent foster home, and appears to have a close relationship with the foster mother. The child is comfortable in the home, demonstrates a bond with the foster mother, and plays with a foster brother. The foster mother is interested in adopting the child.
 {¶ 20} Appellant testified in her own behalf. She stated that she receives $562 per month in Social Security Disability for diagnosed depression. She generally uses public transportation for work and other matters. She stated that she was hospitalized in October 2003 for a miscarriage, in December 2003 for an ovarian cyst and diverticulosis, and was also hospitalized for brief follow-ups in January 2004.
 {¶ 21} Appellant claims that the last time she used illegal drugs was November 20, 2003. She entered the Rural Women's Recovery Program on January 20, 2004. She believes other treatment programs were unsuccessful because she was in denial and not ready. She stated that she accepts the fact that she has a problem, but believes it will be aided by the fact that she has a support system now and a sponsor through her church. Her program is scheduled to end on March 21, 2004, and she intends to finish the program and then continue in counseling. Appellant testified that the program includes assistance in parenting skills, domestic violence, and anger management. She admits to not being successful at first and having a problem with authority. Also, she understands that she will be in recovery the rest of her life.
 {¶ 22} Appellant stated that at visitations, she played and talked with her daughter. She fed her, laughed with her, cuddled her, and told her that she loved her. She claims that their relationship has grown. Appellant claims she stopped attending visitations during the summer because she found it difficult to leave her daughter.
 {¶ 23} Appellant stated that she has four other children, ages 13, 11, nine, and seven. They lived with her "off and on" between "bouts of incarceration and my addiction." Appellant had theft convictions in 1993, 1996, and 1998, and was incarcerated from 1998 until 2001. The children last resided with Appellant in 1997, and are currently in the legal custody of their maternal great-grandmother. Appellant admitted that she "barely" spends any time with these four children, and that S.C. has only been with her siblings once.
 {¶ 24} The guardian ad litem filed a report with the trial court, urging the court to terminate Appellant's parental rights. He indicated that S.C. does not have a strong relationship with her mother and has bonded with the foster family. The child's special needs are being met in the foster home, but the guardian ad litem does not believe Appellant could care for S.C. at this time, noting continued use of drugs, no stable housing, a failure to address mental health issues, and irregular visitations with the child. The guardian ad litem also indicated that reports from Appellant's current drug treatment program reveal the same behaviors she demonstrated in the past. The guardian ad litem opined that, even if this treatment program were successful, it would still be months before Appellant could provide a stable home.
 {¶ 25} Caseworker Smith testified that she believed it was in the best interest of the child to be placed in the permanent custody of LCCS and that S.C. would benefit from adoption. She did not believe Appellant had satisfactorily addressed the concerns of the case plan. She stated that Appellant has not remedied the problems that caused the child to be removed, and stated, furthermore, that she did not believe Appellant could do so in the foreseeable future. There were outstanding drug and alcohol issues, and Appellant had been in the treatment program for only a short time. In addition, the caseworker has received reports from the program that continue to cause her concern. Appellant is having conflicts with other residents and behavioral issues with members of the staff, which are consistent with the problems Appellant had in previous programs.
 {¶ 26} In the present case, the trial court made two findings relevant to the first prong of the permanent custody test: (1) that the child had been in the temporary custody of LCCS for more than 12 months of the prior 22-month period, and (2) that the child cannot be placed with either of her parents within a reasonable time or should not be placed with her parents. See R.C. 2151.414(B)(1)(d) and 2151.414(B)(1)(a).
 {¶ 27} This Court has previously indicated that a children services agency lacks authority to seek permanent custody on the basis that the child has been in the temporary custody of the agency for 12 of the past 22 months until the child has been in the custody of the agency for a full 12 months. In re C.W., 9th Dist. Nos. 21809, 21811, 2004-Ohio-1987, at ¶ 17, citing In reK.G., S.G., T.G., 9th Dist. Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, at ¶ 7. In our review of the record, we find that the facts fail to establish that S.C. was in the temporary custody of LCCS for more than 12 months prior to the filing of the motion for permanent custody.
 {¶ 28} The record indicates that S.C. was removed from her home on December 20, 2002. The child was adjudicated dependent on February 14, 2003. Accordingly, pursuant to R.C.2151.414(B)(1)(d), S.C. entered the temporary custody of LCCS on February 14, 2003. LCCS's motion for permanent custody was filed nine months later, on November 17, 2003. Because S.C. had not been in the temporary custody of LCCS for 12 months at the time the motion for permanent custody was filed, the first prong of the permanent custody test may not be satisfied on this basis. Consequently, our review is concerned with the determination of the trial court that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a).
 {¶ 29} In considering whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, the court is to consider all relevant evidence. R.C.2151.414(E). Furthermore, R.C. 2151.414(E) also contains several factors, the presence of any one of which requires the court, upon a finding by clear and convincing evidence that the factor exists, to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with a parent. R.C. 2151.414(E).
 {¶ 30} While the trial court did not explicitly cite to one of the factors in R.C. 2151.414(E), the detailed findings in its journal entry make it apparent that the trial court relied on R.C. 2151.414(E)(1) in making this determination. Both parties agree that the trial court based its decision on R.C.2151.414(E)(1), and, furthermore, Appellant has not argued that the failure to cite a particular factor is reversible error. Therefore, we will review the evidence presented in light of R.C.2151.414(E)(1). At the same time, we feel constrained to add that the better practice would be for the trial court to indicate the specific factor or factors in R.C. 2151.414(E) upon which it is relying in reaching its determination, so that proper review is ensured.
 {¶ 31} R.C. 2151.414(E)(1) provides:
"Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 32} In this case, the trial court found that Appellant had not demonstrated the sustained effort necessary to complete drug and alcohol treatment to resolve her addiction issues. Appellant admitted to a 12-year dependency on drugs and alcohol. As part of this case, Appellant received a recommendation for substance abuse treatment in January 2003. She began an intensive outpatient program, a residential treatment program, and the Family Drug Court Program, but was quickly terminated from those programs. In March 2003, she was referred to a dual diagnosis program, but failed to contact the facility until nine months later. Appellant admitted that she continued using drugs until November 2003. When she entered the dual diagnosis program in January 2004, Appellant admitted that her attitude was poor. At the time of the hearing, Appellant was only in the third week of a 60-day program, without consideration of any aftercare.
 {¶ 33} In addition, the trial court found that Appellant failed to complete a psychological evaluation until her participation in the current program, and also failed to participate in therapy regarding anger issues and coping skills. Furthermore, the trial court took note of Appellant's sporadic visitation record, her criminal convictions, and the fact that her other four children are in the legal custody of a relative.
 {¶ 34} Appellant argues that the trial court addressed the facts that caused the initial removal of S.C. from the home, as opposed to the status of mother at the time of the hearing. We disagree. It appears that the trial court gave due consideration to the fact that Appellant has had a long-term addiction and that she has made several unsuccessful attempts to address that addiction. During the hearing, the trial judge specifically stated that her concern was the progress Appellant was making in treatment. Appellant's latest effort, while commendable, does not yet rise to the level of demonstrated success. She has only been in the program a short time, and initial reports reflect the same concerns that existed in prior unsuccessful efforts. Upon review, we conclude that the weight of the evidence supports the finding that S.C. cannot be placed with either parent within a reasonable time or should not be placed with a parent.
 {¶ 35} As to the second prong of the permanent custody test, the trial court found that permanent custody was in the best interest of the child. See R.C. 2151.414(D). In making the determination that the grant of permanent custody to the agency is in the child's best interest, the juvenile court was required to:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[3]
"Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 36} While Appellant asserts a lack of evidence on the best interest factors, we find the weight of the evidence supports the conclusion of the trial court. First, as to the interaction and interrelationship of the child, there was conflicting evidence as to whether there was affection demonstrated between Appellant and her child. The trial court was entitled to weigh the credibility of each of the witnesses who testified in this regard. The trial court was also permitted to consider that over the course of one year, Appellant attended less than half of the scheduled visitations, including a significant period of time when she was completely absent from visits. Appellant testified that she had a new support system. However, at the same time, Appellant admitted that she has little or no relationship with her other four children and that she had continued abusing drugs and alcohol while they were in her custody, despite her claim that she "always had a desire to be a mother" to her children. There is no evidence in the record that Appellant has a positive relationship with her own mother, the maternal great-grandmother or any other extended family members.
 {¶ 37} In contrast, S.C. seemed to have a good relationship with the foster mother and the foster brother. The foster mother was interested in adopting the child. While in foster care, S.C. made good strides in her development.
 {¶ 38} Next, Appellant contends that the trial court disregarded the wishes of the child, and questioned whether the trial court considered the report of the guardian ad litem. At 17 months of age, S.C. could not express her own wishes; rather, the guardian ad litem was entitled to express those wishes for her. See R.C. 2151.414(D)(2). In his report, the guardian ad litem indicated that he believed the best interest of the child was that she be placed in the permanent custody of LCCS so that she would be available for adoption. The trial judge stated on the record of the hearing that the guardian ad litem filed his report with the court, and also indicated in her journal entry that she reviewed the court file in making her findings. Neither of the parties indicated that they wished to question the guardian ad litem during the hearing.
 {¶ 39} Third, S.C.'s custodial history demonstrates that she has been in the temporary custody of LCCS since she was three months old. Appellant attended less than half of the scheduled visitations with her child. S.C. remains developmentally delayed, but appears to have made improvements while in foster care.
 {¶ 40} Finally, there was evidence that the child needs stability in her life, perhaps more so than other children, because S.C. is developmentally delayed and has demonstrated that she has benefited from the therapy and the services that have been provided to her on a regular basis.
 {¶ 41} Appellant is in the initial stages of a 60-day program. The length of aftercare or monitoring is undetermined as yet. Appellant's determination to succeed, as she expressed in the trial court, is commendable, but initial reports from the program reflect the same attitude problems that existed in previous programs from which she was terminated.
 {¶ 42} There are no suitable relatives or friends that are willing to take S.C. The child is doing well in her foster placement, and the foster mother is interested in adopting her.
 {¶ 43} The trial court found that it was in the best interest of the child that she be placed in the permanent custody of LCCS. Upon review, we find that the evidence supports that finding. Accordingly, Appellant's assignment of error is overruled.
 III. {¶ 44} Having overruled Appellant's sole assignment of error, the judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Boyle, J., concur.
[1] Concerns regarding Howard included assaultive behavior, a history of drug and alcohol abuse, and an inability to provide for the child's needs. He completed a drug and alcohol assessment, but failed to attend the recommended treatment program. His employment was sporadic, he has a conviction for aggravated assault, and he last visited with S.C. in March 2003.
[2] Appellant does claim that there is an anger management component to the mental health and substance abuse program in which she is presently enrolled.
[3] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.