[Cite as *In re A.K.*, 2026-Ohio-901.]

STATE OF OHIO　　　　）　　　　　IN THE COURT OF APPEALS
　　　　　　　　　　　　）ss:　　　　NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT　　）

IN RE: A.K.

C.A. Nos.　　31648
　　　　　　　31701

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.　　DN 24 05 0371

DECISION AND JOURNAL ENTRY

Dated: March 18, 2026

FLAGG LANZINGER, Judge.

{¶1}　Appellants, A.K. ("Mother") and J.K. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}　Mother and Father are the biological parents of A.K., born January 10, 2020.  The Cuyahoga County Juvenile Court removed Mother's two older children from her custody several years before A.K. was born.  Those children were ultimately placed in the legal custody of non-parents and are not parties to this appeal.

{¶3}　A.K. first came to CSB's attention after the child suffered multiple skull fractures and a traumatic brain injury that required emergency surgery and hospitalization.  After an investigation, CSB concluded that A.K.'s injuries were likely caused by the child accidentally

falling from a swing and striking his head on a large rock. Although CSB ruled out its initial concern about physical abuse, the agency learned about other concerns in the child's home that posed a risk to his wellbeing.

{¶4} The juvenile court ordered the emergency removal of A.K. from the home during late May 2024. CSB filed original and amended complaints to allege that A.K., then four years old, was a neglected and dependent child primarily because of domestic violence perpetrated by another man against Mother; ongoing drug use in the home; the extensive criminal histories of Mother and Father; and concerns that the parents could not meet A.K.'s basic or special medical needs. The parents waived their rights to an adjudicatory hearing, CSB dismissed the allegations of neglect, and the trial court adjudicated A.K. as a dependent child. The court later placed A.K. in the temporary custody of CSB and adopted the case plan as an order of the court.

{¶5} Throughout this case, A.K. resided in the same foster home and became closely bonded to the entire family. When CSB placed A.K. with the foster family, the child was still recovering from extensive surgery that had placed metal plates in his head to protect his brain while his skull healed. Although A.K. was healing well and showed no symptoms of brain damage, he would require ongoing neurological care for the foreseeable future. In addition to his brain injury, A.K. exhibited unusually volatile and aggressive behavior and was diagnosed with post-traumatic stress disorder and anxiety. The case plan required the child's caregiver to consistently address his medical and mental health needs. The foster parents had ensured that A.K. received regular medical treatment for his head injury and that he was engaged in weekly mental health counseling. A.K. was beginning to speak to his counselor and the foster parents about his feelings, and his volatile behavior was subsiding.

{¶6}    The case plan required Mother to obtain substance abuse and mental health assessments and follow all treatment recommendations; maintain sobriety and make appropriate choices to protect herself and her child; and demonstrate that she can meet the basic and unique medical needs of A.K.  For the next several months, although Mother admitted to a long history of substance abuse, she failed to engage in mental health or substance abuse treatment and continued to test positive for methamphetamine when she submitted oral swabs for drug screening.  Mother also did not obtain stable income or housing but moved between the homes of friends who allowed her to stay with them.  During December 2024, Mother was caught in possession of methamphetamine and was charged with aggravated possession of drugs, a fifth-degree felony.  She spent a few weeks in jail, and the criminal court later convicted her of that offense, sentenced her to one year in prison, but suspended the sentence and placed her on community control for two years.

{¶7}    Mother attended most scheduled visits with A.K., who appeared to be happy to see her, but Mother's behavior was often inappropriate and upsetting to A.K.  The visitation supervisors sometimes redirected Mother to speak to A.K. about age-appropriate topics, rather than telling him about adult topics such as when she and her dog were attacked and harmed.  Mother's contact with A.K. did not expand beyond weekly, closely supervised visits at the agency because she did not address the mental health or substance abuse components of the case plan.

{¶8}    Regarding Father, the case plan emphasized Father had minimal involvement with A.K. throughout the child's life and that they "have a strained relationship."  Father was required to "make his intentions known to [CSB]" about pursuing a relationship with A.K.  If Father chose to be involved in the child's life, the case plan required him to "meet with [CSB] for further

assessment[]" and pursue any referrals for mental health and/or substance abuse assessments and other services to demonstrate that he can provide for the needs of the child.

{¶9} Father has an extensive criminal record. At the time this case began, he had just been released from incarceration. Shortly after the trial court adopted the case plan, Father was arrested again on charges of criminal trespassing and obstructing official business. In October 2024, February 2025, and June 2025, Father was arrested on additional felony charges that included breaking and entering, receiving stolen property, aggravated possession of drugs, and having weapons while under disability. Father was apparently incarcerated during much of this case, and he did not maintain contact with CSB, the guardian ad litem, or the child. He never reached out to CSB about wanting custody of A.K., and he did not engage in any case plan services. The caseworker and the guardian ad litem tried to reach out to Father, but they were usually unable to reach him because he had not kept them informed about his whereabouts or how to contact him.

{¶10} After a review hearing in January 2025, the magistrate found that Mother was not engaging in case plan services, had denied requests for oral drug screens, and admitted that she was still abusing drugs. The magistrate further indicated that Father's whereabouts were unknown at that time and that the caseworker had not been able to contact him for the past three months.

{¶11} On February 11, 2025, CSB moved for permanent custody of A.K. It alleged that the child could not or should not be returned to the custody of either parent and that permanent custody was in A.K.'s best interest. *See* R.C. 2151.414(B)(1)(a). The alternative factors alleged under R.C. 2151.414(B)(1)(a) included that the parents had failed to substantially remedy the conditions that had caused the initial and ongoing removal of the child from the home and that they had demonstrated a lack of commitment to the child. *See* R.C. 2151.414(E)(1); 2151.414(E)(4).

{¶12} The parties appeared with trial counsel for a final hearing before the juvenile court judge. Father was still incarcerated at that time but was transported to court for the hearing. Mother sought a six-month extension of temporary custody and Father supported her request. Father's trial counsel emphasized that Father supported Mother's request for an extension of temporary custody so she would have more time to work on the case plan. Mother testified at the hearing, but Father did not.

{¶13} Following the hearing, the trial court explicitly found that "the child cannot be placed with either of the child's parents within a reasonable amount of time or should not be placed with either parent. R.C. §2151.414(B)(1)(a)[]" and "that permanent custody is in the child's best interests." Consequently, the trial court terminated parental rights and placed A.K. in the permanent custody of CSB. Mother and Father appeal and raise a total of three assignments of error, which this Court will address together because they are closely related.

II.

### MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED [CSB'S] MOTION FOR PERMANENT CUSTODY AND PLACED THE CHILD IN [THE AGENCY'S] CUSTODY EXTINGUISHING FATHER'S PARENTAL RIGHTS TO HIS CHILD. THE EVIDENCE PRESENTED AT TRIAL WAS DEVOID OF RELEVANT EVIDENCE RELATED TO FATHER, HIS FAILURE TO REMEDY THE CONDITIONS THAT CAUSED REMOVAL OF THE CHILD OR HIS THEN EXISTING CONDITION AS REQUIRED BY STATUTE AND OHIO LAW.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED [CSB'S] MOTION FOR PERMANENT CUSTODY AND PLACED THE CHILD IN [THE AGENCY'S] CUSTODY EXTINGUISHING FATHER'S PARENTAL RIGHTS TO HIS CHILD. THE TRIAL COURT'S ENTRY IS NOT SUPPORTED BY THE SUFFICIENCY OR WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL NECESSARY TO ESTABLISH A CLEAR AND CONVINCING DETERMINATION OF PERMANENT CUSTODY.

{¶14} Mother and Father raise a narrow challenge to the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or *that the child cannot be placed with either parent*, based on an analysis under R.C. 2151.414(E); *and (2) that the grant of permanent custody to the agency is in the best interest of the child*, based on an analysis under R.C. 2151.414(D)(1). (Emphasis added.) R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶15} As quoted above, the trial court made an explicit finding on each prong of the permanent custody test. Specifically, it found that "the child cannot be placed with either of the child's parents within a reasonable amount of time or should not be placed with either parent. R.C. §2151.414(B)(1)(a)[]" and "that permanent custody is in the child's best interests." These findings, by their explicit terms, applied to both Mother and Father.

{¶16} As to Mother, the trial court further explained that it based its "cannot or should not" finding under R.C. 2151.414(B)(1)(a) on the factor set forth in R.C. 2151.414(E)(1). It cited to that (E) factor and detailed some of the evidence that supported its finding that Mother had

failed to substantially remedy the conditions that caused A.K. to be removed and remained placed outside the home under R.C. 2151.414(E)(1). Neither parent has challenged the merits of the trial court's permanent custody findings or judgment as it pertains to Mother.

{¶17} Instead, both parents focus their arguments on the trial court's stated findings regarding Father. Specifically, they assert that the trial court committed reversible error because it did not also specify the factor under R.C. 2151.414(E) that was the basis for its "cannot or should not" finding as to Father. They fail to cite, and this Court is unaware of any, legal authority that required the trial court to cite to a specific factor or factors under R.C. 2151.414(E) to explain its first prong finding under R.C. 2151.414(B)(1)(a). In fact, "[t]he Ohio Supreme Court has interpreted the plain language of Section 2151.414 to require a juvenile court to make only two specific findings to support its award of permanent custody: '(1) that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies and (2) that a grant of permanent custody is in the child's best interest.'" *In re M.P.*, 2024-Ohio-5798, ¶ 13 (9th Dist.), quoting *In re A.M.*, 2020-Ohio-5102, ¶ 18, citing R.C. 2151.414(B)(1). As quoted above, the trial court complied with this requirement by explicitly stating its findings on both prongs of the permanent custody test.

{¶18} This Court has repeatedly held that, in making a finding that the child cannot or should not be returned to the custody of the parents under R.C. 2151.414(B)(1)(a), the trial court is not required to cite to a specific subsection of R.C. 2151.414(E). *In re M.P.* at ¶ 16 (9th Dist.), citing *In re F.W.*, 2017-Ohio-5624, ¶ 12 (9th Dist.); *In re I.K.*, 2005-Ohio-1634, ¶ 26-27 (9th Dist.); *In re S.C.*, 2004-Ohio-4570, ¶ 30 (9th Dist.). Although such a finding might aid this Court in its appellate review, it is not required. Moreover, in this case, the court's findings on two specific (E) factors can be gleaned from the language of the trial court's judgment entry. *See id*.

{¶19} In its final judgment, the trial court found that Father was currently incarcerated and that he had not maintained contact with the child or the CSB caseworker. CSB had alleged that A.K. could not or should not be placed with Father under R.C. 2151.414(B)(1)(a) because Father had failed to remedy the conditions that caused the child to remain placed outside the home under R.C. 2151.414(E)(1) and had demonstrated a lack of commitment to the child under R.C. 2151.414(E)(4).

{¶20} Father argues that the agency's evidence was insufficient in this regard, but CSB's undisputed evidence regarding Father established that he had virtually no involvement in this case. The most recent caseworker and the guardian ad litem testified at the hearing about their lack of contact with Father and his failure to express any interest in reunifying with A.K. or working on the case plan. In addition to their testimony about Father, the guardian ad litem filed a report prior to the hearing, which included further details about Father's numerous felony arrests and his failure to participate in any aspect of this case before the final hearing. The trial court was permitted to consider the contents of the guardian ad litem report as evidence, as the guardian ad litem testified at the hearing and was subject to cross-examination by the parties. *See In re Hoffman*, 2002-Ohio-5368, ¶ 18-25.

{¶21} Father was present at the hearing and represented by trial counsel. Although he had no burden to present evidence, he could have testified in his own defense but did not. Father's trial counsel had the opportunity to cross-examine the caseworker and the guardian ad litem about Father's lack of effort in this case, yet he did not attempt to test the credibility of any of that evidence.

**{¶22}** Given this Court's review of the record, we must conclude that the parents have failed to demonstrate any deficiency in the findings of the trial court or that the evidence failed to support the trial court's judgment. The parents' assignments of error are overruled.

III.

**{¶23}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

<u>APPEARANCES:</u>

NEIL P. AGARWAL, Attorney at Law, for Appellant.

DAVID LOWRY, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and ASHLEE JAMES, Assistant Prosecuting Attorney, for Appellee.

JOE KERNAN, Guardian ad Litem.