[Cite as *In re D.J.*, 2024-Ohio-1876.]

STATE OF OHIO      )
                )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: D.J.
     D.J.
     D.J.

C.A. Nos .    30970
             30971
             30972

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21 01 030
             DN 21 01 031
             DN 21 08 601

DECISION AND JOURNAL ENTRY

Dated: May 15, 2024

STEVENSON, Presiding Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her three children in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of De.J., born November 18, 2016; Dw.J., born September 27, 2019; and Di.J., born July 30, 2021. Father had limited participation in the proceedings below, and near the end of the cases the consensus of the parties was that Father had died.

{¶3} In January 2021, the police removed De.J. and Dw.J. from the parents' home pursuant to Juv.R. 6 after arresting Mother for domestic violence against Father, who was too intoxicated to care for the children. After investigating, CSB filed complaints the next day, alleging that both children were abused, neglected, and dependent based the family's history with the agency; domestic violence issues; unsanitary home conditions; and concerns regarding the parents' mental health, substance abuse, and criminal activity. The juvenile court placed the children in the emergency temporary custody of CSB which placed the siblings with their maternal grandmother ("Grandmother").

{¶4} At the adjudicatory hearing, CSB withdrew its allegations of abuse and neglect. Mother stipulated that De.J. and Dw.J. were dependent, and the agency presented evidence in Father's absence to prove the children's dependency. Both parents waived their rights to a dispositional hearing, and the juvenile court awarded temporary custody to CSB. The agency maintained the children's placement with Grandmother. The trial court adopted the agency's case plan which included mental health, chemical dependency, and basic needs components for the parents. Mother was also ordered to comply with the terms of her probation.

{¶5} In July 2021, Grandmother asked CSB to remove the children from her home because she needed to address her own serious health issues. The agency placed the boys in a foster home. A week later, Mother gave birth to Di.J. CSB removed that child from Mother after she tested positive for methamphetamine at the child's birth and had failed to make any progress on her objectives in the older children's case plan. The agency placed Di.J. in the same foster home with his brothers.

{¶6} Based on the agency's evidence and Mother's stipulation, the juvenile court adjudicated Di.J. a dependent child. After a dispositional hearing, the trial court placed Di.J. in CSB's temporary custody and adopted the agency's case plan as an order.

{¶7} In the meantime, CSB filed a motion for permanent custody regarding De.J. and Dw.J. Mother moved for legal custody, or alternatively, a six-month extension of temporary custody. The juvenile court extended the agency's temporary custody. Later, CSB withdrew its motion for permanent custody of the two boys and requested a second six-month extension of temporary custody based on Mother's case plan compliance. The agency further moved for a first six-month extension of temporary custody as to Di.J. The juvenile court granted both motions to extend CSB's temporary custody of all three children.

{¶8} The children's maternal grandfather ("Grandfather") moved to intervene in the cases. After a hearing, the juvenile court found Grandfather was not entitled to either permissive intervention or intervention as of right and denied his motion.

{¶9} Prior to the two-year sunset date on the older siblings' cases, CSB moved to modify all three children's dispositions from temporary custody to legal custody to Mother under the agency's protective supervision. The guardian ad litem recommended the change in disposition. At the motion hearing, the parties[1] agreed, and the juvenile court placed De.J., Dw.J., and Di.J. in Mother's legal custody with protective supervision.

{¶10} Two months later, Mother moved to terminate the agency's protective supervision. The guardian ad litem recommended maintaining the status quo because Mother had acquired new criminal charges in addition to already-pending charges and was facing a possible nine-month jail

---

[1] Mother reported at the January 2023 hearing that Father had died.

sentence. The magistrate ordered ongoing protective supervision based on the parties' agreement but issued another order four days later returning the three children to CSB's temporary custody.

{¶11} After a full evidentiary review hearing, the magistrate placed the children in the agency's temporary custody, effective as of the date of its prior order. The magistrate found that Mother had not been engaged in mental health services for the past five months, her medication compliance was in question, she was not employed, she was not maintaining the children in their necessary services, and each child was regressing in his own way. Mother filed an objection to the magistrate's decision.

{¶12} The juvenile court overruled Mother's objection and maintained the children in CSB's temporary custody. It found that significant changes and concerns arose within a short time of the children's reunification with Mother. Specifically, the trial court noted that Mother had not enrolled De.J. in counseling, that the child missed a lot of school during those few months, and that his behavior worsened. It found that Mother had not continued Dw.J. in speech therapy resulting in a decrease in his communication skills. Moreover, the juvenile court noted that Mother had not taken Di.J. to his scheduled well child visit. Accordingly, the trial court found that the children lacked consistency in Mother's care and that their developmental needs were not being met in her home.

{¶13} CSB moved for permanent custody of all three children. Grandfather filed an amended motion to intervene. Mother moved for legal custody, or alternatively, legal custody to Grandfather.

{¶14} Immediately prior to the permanent custody hearing, the juvenile court heard Grandfather's testimony relating to his involvement and relationship with the children in consideration of his renewed motion to intervene. The trial court denied Grandfather's motion but

agreed to consider his testimony in relation to Mother's alternative motion for legal custody to him.

{¶15} When the permanent custody hearing began, De.J.'s and Dw.J.'s cases had been pending for almost three years. Di.J.'s case had been initiated almost two and a half years before the hearing. After the conclusion of the permanent custody hearing, the juvenile court issued a judgment denying Mother's alternative custodial motions, terminating all parental rights, and awarding permanent custody of the three children to CSB.

{¶16} The trial court found that neither Mother nor Grandfather were suitable custodians. Mother was then in jail and recently demonstrated an inability to meet the children's developmental needs when they were reunified with her for a few months. Grandfather was living in senior subsidized housing with only one bedroom. His assistance when the children were reunified with Mother did not alleviate any concerns or ensure appropriate care for the children. In addition, Grandfather had informed the court that he could not care for the children alone and that he was willing to assume legal custody only until Mother was able to resume custody. Accordingly, the juvenile court found that it was not in the best interest of the children to grant legal custody to Grandfather.

{¶17} Mother timely appealed the juvenile court's judgment. She raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE [JUVENILE] COURT COMMITTED REVERSIBLE ERROR UNDER R.C. [ ] 2151.414(D)(1)(D) WHEN IT FOUND THAT IT WAS IN THE CHILDREN'S BEST INTERESTS TO BE PLACED INTO THE PERMANENT CUSTODY OF [CSB] WHEN THAT FINDING WAS SUPPORTED NEITHER BY THE WEIGHT NOR THE SUFFICIENCY OF THE EVIDENCE PRODUCED.

**{¶18}** Mother argues that the juvenile court's award of permanent custody of the children to CSB is not supported by sufficient evidence and is against the manifest weight of the evidence. This Court disagrees.

**{¶19}** This Court has parsed out the distinction between sufficiency and manifest weight within the context of a permanent custody determination. "Sufficiency and weight of the evidence are both quantitatively and qualitatively distinct." *In re F.W.*, 9th Dist. Summit Nos. 28520 and 28529, 2017-Ohio-5624, ¶ 9, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 23. "'[S]ufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a [judgment] is a question of law.'" *In re F.W.* at ¶ 9, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶20}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley* at ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶21}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and

(2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶22} Mother concedes the propriety of the juvenile court's first prong finding that the children were in the temporary custody of CSB for more than 12 months during the prior 22 consecutive months. She further does not challenge the juvenile court's best interest findings relating to R.C. 2151.414(D)(1)(a) through (c).[2] Those factors relate to the children's interactions and interrelationships, custodial histories, and wishes.

{¶23} Mother challenges only the juvenile court's R.C. 2151.414(D)(1)(d) finding regarding the children's need for permanence and whether that could be achieved without granting permanent custody to CSB. It is well settled that the juvenile court need not find that permanent custody is the only available custodial option for the children before terminating parental rights. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 64. Moreover, the best interest determination requires consideration of all the statutory factors without according greater weight

---

[2] The subsection (D)(1)(e) factor is not relevant to these cases.

to any single factor. *Id.* at ¶ 56. In fact, "[t]he statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor." *Id.* at ¶ 64.

{¶24} In this case, the evidence demonstrated that Mother was in jail and unable to assume custody of the children. The cases continued beyond the two-year statutory limit and R.C. 2151.415(D)(4) prevented the juvenile court from granting any further extensions of temporary custody. CSB presented clear and convincing evidence that Grandfather could not provide an appropriate permanent home for the children. He lives in a one-bedroom apartment in senior subsidized housing which could not accommodate three children. Significantly, he testified that he could not care for the boys alone, but more importantly, that he hoped to return the children to Mother once she was in a position to resume custody. Under the circumstances, the evidence demonstrated that an award of legal custody to Grandfather would not provide the permanence and stability the children required.

{¶25} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding permanent custody of De.J., Dw.J., and Di.J. to CSB. Accordingly, the juvenile court's judgment granting the agency's motion and terminating the parents' parental rights is supported by sufficient evidence and not against the manifest weight of the evidence. Mother's assignment of error is overruled.

### III.

{¶26} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

ALEXANDRA HULL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.