**[Cite as *In re S.G.*, 2025-Ohio-4547.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.G.

C.A. No.     31444

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23 03 0183

DECISION AND JOURNAL ENTRY

Dated: September 30, 2025

CARR, Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother and Father conceived a child during a brief acquaintance. Mother gave birth to S.G. on February 10, 2023, and abandoned the infant immediately thereafter. She has had no further involvement in the child's life.

{¶3} S.G. exhibited signs of drug withdrawal, experienced respiratory distress, and required NG tube feedings after birth. Father learned of the child's existence shortly after S.G. was born. He subsequently established his paternity of the child.

{¶4} Based on Mother's abandonment of the child, S.G.'s medical needs, and concerns regarding the then-alleged father's criminal history, CSB filed a complaint alleging that S.G. was

an abused, neglected, and dependent child. The agency obtained an emergency order of temporary custody. Father attended the shelter care proceedings, waived his rights to a hearing, and stipulated to probable cause for the child's removal. The magistrate ordered Father to submit to genetic testing. After he established paternity, Father was granted visitation with the child for four hours per week.

{¶5} Father appeared for both adjudication and the initial disposition, waiving his rights to each hearing. The juvenile court adjudicated S.G. abused, neglected, and dependent as alleged in the complaint. The court placed the child in CSB's temporary custody, adopted the agency's case plan as an order, and granted discretion to CSB and the guardian ad litem to increase Father's visitation beyond four hours per week.

{¶6} The initial case plan required Father to establish paternity, cooperate with CSB, attend court hearings, and notify the agency of his desires regarding visitation and custody. After Father established paternity, the juvenile court adopted the agency's amended case plan without objection by Father. The amended case plan required Father to obtain mental health and substance use assessments, follow all recommendations, submit to drug screens, develop and maintain a sobriety network, demonstrate the ability to provide for the child's basic needs, and execute all necessary releases of information from service providers.

{¶7} Evidence at the first review hearing demonstrated that, while Father was appropriate and affectionate with the child during visitation, his attendance was inconsistent. Father missed six of twelve visits, left early during two visits, and requested that the agency decrease his visitation time from four hours to two per week.

{¶8} Father began participating in case plan services. Although his visitation remained inconsistent, CSB moved for a first six-month extension of temporary custody in advance of the

first sunset hearing. The guardian ad litem reported that Father's progress on his case plan objectives warranted an extension of temporary custody. She recommended developing a plan to expand Father's visits to the community and in his home under supervision. Father waived his rights to a hearing and all parties agreed to an initial extension of temporary custody.

{¶9} The parties immediately developed and implemented an expansive visitation schedule. Father had two six-hour unsupervised in-home visits with the child. Thereafter, CSB became aware of Father's numerous recent criminal issues and relapse into substance use. Accordingly, the agency returned Father's visits to its Family Enrichment Center. Father declined to take advantage of his opportunity for visitation and did not see S.G. from March 2, 2024, until July 17, 2024.

{¶10} Almost 18 months into the case, CSB moved for permanent custody. Father moved for legal custody, or alternatively, temporary custody to himself. The juvenile court concluded a two-day hearing shortly after the case had been pending for two years. The trial court granted the agency's motion for permanent custody and terminated Mother's and Father's parental rights. Father appealed, raising two assignments of error for review. This Court consolidates the assignments of error to facilitate review.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE [CSB] FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO TERMINATE [FATHER'S] PARENTAL RIGHTS.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S TERMINATION OF [FATHER'S] PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶11} Father argues that the juvenile court's award of permanent custody of S.G. is not supported by sufficient evidence and is against the manifest weight of the evidence. This Court disagrees.

{¶12} This Court recognizes the distinction between sufficiency and manifest weight within the context of a permanent custody determination. "Sufficiency and weight of the evidence are both quantitatively and qualitatively distinct." *In re D.J.*, 2024-Ohio-1876, ¶ 19 (9th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 23. "'[S]ufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a [judgment] is a question of law.'" *In re D.J.* at ¶ 19 (9th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶13} In determining whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley* at ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶14} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on

an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶15} The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶16} As its first prong grounds, CSB alleged, alternatively, that S.G. had been in the agency's temporary custody in excess of 12 months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d), that both parents had abandoned the child per R.C. 2151.414(B)(1)(b), and that S.G. could not or should not be placed with either parent under R.C. 2151.414(B)(1)(a) based on various subsection (E) grounds. Father makes one bald assertion that the evidence did not establish that he abandoned the child. He otherwise fails to address the juvenile court's first prong findings.

{¶17} The juvenile court found that CSB had proven both the abandonment and 12 of 22 first prong grounds. "Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one." *In re F.D.*, 2023-Ohio-706, ¶ 38 (9th Dist.). Father does not challenge the trial court's finding that S.G. was in CSB's temporary custody in excess of 12 months of a consecutive 22-month period. As the child entered the agency's temporary custody on June 14, 2023, and CSB filed its motion for permanent custody on August 15, 2024, clear and convincing evidence supports the juvenile court's first prong finding.

{¶18} Father argues that permanent custody is contrary to the best interest of S.G. He focuses his challenge on his case plan compliance and established bond with the child. This Court reiterates our long-held proposition of law that, while a parent's case plan compliance is relevant to the best interest of the child, it is not dispositive of the issue. *In re M.S.*, 2023-Ohio-1558, ¶ 24 (9th Dist.). We focus our review on the above-listed R.C. 2151.414(D) best interest factors, which take into consideration a parent's case plan progress.

{¶19} S.G. was never in Father's legal custody. CSB removed the child upon his release from the hospital after his birth and placed him in a foster home where he remained for more than two years. S.G. is closely bonded with his foster family. The guardian ad litem reported that the child seeks comfort from them and is happy to be reunited after visits.

{¶20} The foster family has close friends ("the G.s") who have been approved to provide respite care for the child on a regular basis. S.G. has spent multiple days and nights each week with the G.s in their home, where he has toys, clothing, and a bed. The guardian ad litem reported that the child is strongly bonded with the G.s, their children, and their extended family. She added that S.G. is playful and sociable with the foster family and respite caregivers.

{¶21} Father has visited inconsistently with the child. The visitation case aide testified that Father has missed at least every other weekly visit during the six months she has monitored his visits. The caseworker testified that, prior to that, Father would miss weeks or even months of visits at a time. Father admitted that he refused to do anything in pursuit of reunification, including visitation, for a four-month period because he was angry with the caseworker. Although the visitation case aide testified that she believed that Father and S.G. shared a bond, the guardian ad litem reported that the child was "not strongly" bonded with Father. She explained that, while Father was affectionate and attentive to the child, S.G. did not reach out to Father for comfort or

other needs as he did towards the foster family and the G.s. S.G.'s reliance on these caregivers is understandable as he has had a close relationship with them his whole life. Unfortunately, Father was unable to develop a similar bond with the child because of his sporadic and missed visits.

{¶22} The child was too young to express his wishes for custody, so the guardian ad litem spoke on his behalf. She testified that an award of permanent custody would be in the child's best interest, given his strong bonds and secure attachments with both the foster family and respite caregivers who expressed the desire to provide a permanent home for S.G. The child was comfortable, happy, and healthy in both caregivers' homes where all his needs were met.

{¶23} The guardian ad litem testified that it would not be in S.G.'s best interest to place him in Father's legal custody. She opined that, after spending his entire life in CSB's temporary custody, the two-year-old child deserved permanence. The guardian ad litem testified that Father had failed to show a strong commitment to parenting as evidenced by his inconsistent visits, weeks- and months-long absences from the child's life, and request for reduced visitation times. When asked why he requested that his visits be reduced from four hours to two, Father testified that his fiancée did not want to wait outside the visitation center for Father that long. In addition to reporting Father's lack of commitment to the child, the guardian ad litem testified that Father had not been able to sustain a significant period of sobriety. Accordingly, she maintained her recommendation from her report for permanent custody.

{¶24} Both the caseworker and guardian ad litem emphasized the child's need for permanence after more than two years in agency care. Because Father's case plan compliance was limited, he failed to demonstrate his ability to eliminate the risks to the child's safety and well-being. Father's case plan objectives included basic needs, substance abuse, and mental health. The caseworker testified that Father had not successfully met any objectives.

{¶25} As to the first objective, the caseworker testified that Father had not demonstrated to CSB that he was able to provide for the child's basic needs. Father claimed he delivered packages for Amazon Flex and was starting a home barber business. The caseworker testified that Father declined to answer when he asked Father if his business was generating any income. By the time of the hearing, Father had only provided the caseworker with his 1099 tax form from the prior year, indicating he earned $5,500 in 2024. When Father testified on the second day of the hearing, he presented his 2024 tax return that showed a yearly income of $18,595. Although Father testified that his fiancée was earning $40,000 per year, he did not provide CSB or the trial court with evidence of that.

{¶26} Father lives with his fiancée in a physically appropriate home leased by her. There have been incidents of "domestic discord" between the two. Their infant daughter lives with them, and Father's three older children visit him every weekend. There was no evidence as to whether or not he provides child support for his three older children.

{¶27} Father does not own a car. His driver's license is suspended due to three admitted prior convictions for driving under the influence. He relies on his fiancée to drive him to visits and when he has to deliver packages for Amazon.

{¶28} As to his substance abuse objective, Father was involved with a service provider, but he had not maintained sobriety or recognized the significance of his substance use issues. Father's counselor at Signature Health testified that Father had been involved in their services for three years. He completed an intensive outpatient program before S.G.'s birth, then voluntarily participated in aftercare services. At the present, Father was meeting with his counselor fairly consistently every one to two weeks, although he missed some appointments due to transportation issues or conflicts with visitation. The counselor testified that she believed Father had successfully

completed his programs at Signature Health because he had negative drug screens and participated in services on a regular basis.

{¶29} The caseworker testified that he was only recently able to make contact with Father's counselor because Father had failed to execute a release of information. Father's Signature Health records contained only two drug and alcohol screens, both of which were negative. However, Father consistently refused the caseworker's requests for drug swabs. In addition, Father admitted relapsing shortly after the trial court granted the first extension of temporary custody. His counselor was unaware of the relapse as Father failed to disclose it to her. His counselor was also unaware of Father's recent criminal matters and that he had not been visiting consistently with S.G. Accordingly, while the counselor believed that Father had successfully addressed his substance abuse issues, the caseworker testified that the counselor did not have a full understanding of Father's circumstances.

{¶30} The caseworker testified regarding his concerns for Father's lack of compliance with his mental health objective, as well. While Father's counselor testified that she and Father spent approximately 30 percent of their time together on mental health issues, her primary focus was substance abuse. The caseworker testified that Father was not managing his mental health symptoms effectively because he had not engaged in medication management with a psychiatrist for a year and was not taking his prescribed medications consistently. Father testified that he regularly takes Prozac but admitted that he refuses to take Seroquel as prescribed.

{¶31} Father further admitted that he stopped cooperating with the caseworker for several months after CSB did not approve his fiancée for visits with the child. The caseworker testified that the fiancée was with Father when the police stopped him and spotted an open container of alcohol in the car. Moreover, Father did not have a current driver's license at the time. The

caseworker testified that the agency could not approve the fiancée for visits because she was involved in Father's alcohol use and was not an appropriate sober support for him. Explaining why he stopped visiting the child and cooperating with the caseworker, Father testified, "[I]f he wasn't going to do some of the things I asked him to do, I was not doing nothing he asked me to do."

{¶32} Father argues that he fully complied with his case plan objectives. The evidence, however, demonstrates that the caseworker accurately recognized that, while Father made some efforts towards compliance, he had not engaged consistently or honestly enough to effectively remedy the concerns that put S.G. at risk.

{¶33} Finally, R.C. 2151.414(E)(10) is applicable because Father abandoned the child. R.C. 2151.011(C) states that "[f]or the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." The record demonstrates that Father had no contact with S.G. from March 7, 2024, until July 17, 2024, a period in excess of 90 days.

{¶34} After a thorough review, this Court concludes that the record demonstrates that the evidence is legally sufficient to support an award of permanent custody of S.G. to CSB. *See Eastley*, 2012-Ohio-2179, at ¶ 11, quoting *Thompkins*, 78 Ohio St.3d at 386. In addition, there is nothing in the record to demonstrate that the juvenile court clearly lost its way and created a manifest miscarriage of justice in finding that it is in S.G.'s best interest to be placed in the agency's permanent custody. *See Eastley* at ¶ 20. The evidence clearly and convincingly established that Father had neither demonstrated the ability to meet the child's basic needs nor adequately addressed his substance abuse and mental health issues. Father did not visit frequently

or consistently enough to develop a strong parent-child bond, failing to maintain contact with S.G. for weeks and months at a time. The child had spent his entire two-year life in CSB's custody and deserved permanence. The guardian ad litem opined that permanent custody was in the child's best interest, as Father had not demonstrated his ability to provide a safe and stable home and there were no relatives who were willing and appropriate for legal custody. Under the circumstances, the juvenile court did not err by finding that permanent custody is in the best interest of S.G.

{¶35} The juvenile court's termination of parental rights as to S.G. is supported by sufficient evidence and is not against the manifest weight of the evidence. Accordingly, Father's first and second assignments of error are overruled.

III.

{¶36} Father's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.